STATE, EX REL. JOHN C. AHRENS, v. WILLIAM H. F. FIEDLER, MAYOR, &c.

1. Where, by the regulations of a municipal corporation, money in its treasury can only be drawn upon an order signed by a city officer, and the duty of such officer in respect thereto is wholly ministerial, a *mandamus* will issue to compel such officer to sign such an order for a sum of money appropriated to pay a claim, by the body entrusted within such municipality with the power of appropriation.

2. An objection to a resolution appropriating money to pay a claim against the corporation, interposed by way of veto by a mayor having a veto power, and overcome by the requisite vote, cannot be again urged by the mayor, to avoid doing a mere ministerial act to effectuate such appropriation.

On application for a *mandamus* requiring the defendant, as mayor of the city of Newark, to sign a warrant for the payment of $254.80 from the city treasury to relator.

Argued at February Term, 1881, before Justices VAN SYCKEL and MAGIE.

For the relator, *J. H. Stone.*

For the defendant, *Henry Young.*

The opinion of the court was delivered by

MAGIE, J. On December 3d, 1880, relator caused to be presented to the common council of Newark a bill claiming $254.80 for two thousand five hundred and forty-eight yards of filling on certain lots therein described. The bill was certified by the city surveyor to be correct as to measurement, and by the street commissioner to be correct. The council thereupon passed a resolution that the sum of $254.80 should be appropriated in payment of the bill. This resolution was presented to the mayor, pursuant to the requirements of the thirtieth section of the city charter. On December 7th, 1880, the mayor returned the resolution unsigned, with his objections. Thereupon, on January 7th, 1881, the council proceeded to reconsider the resolution, and, by a vote of two-thirds of all the members, passed the same, notwithstanding the mayor's objections. It is conceded that the resolution thereupon took effect. On the 13th of January the city clerk drew and signed a warrant, or order, on the city treasurer, requiring him to pay to relator's order the sum named in the resolution. This warrant the mayor has refused to sign, and the present proceeding is an application on the

part of relator, in the nature of a rule to show cause why a *mandamus* should not issue requiring the mayor to append his signature thereto. It has been argued on a state of the case agreed on by the parties.

The additional facts appearing which are material for an understanding of the case are these : Relator was a successful bidder, under a due advertisement on the part of the city, for proposals to do certain filling of lots in the Fourteenth ward, to abate a nuisance which had been duly determined to exist there. He bid for the work at ten cents per cubic yard. The contract was awarded to him upon his bid, and was drawn by the city officers and executed by relator and his sureties. The mayor refused to sign the same on the part of the city. In the meantime the city surveyor had driven stakes for relator's work, and he began it, and had filled about two thousand cubic yards, when he was notified by the mayor that the contract had not been completed, and that whatever work he did was at his own risk. Relator afterward presented the bill, which was ordered paid as above described.

The question now presented is whether, under these circumstances, relator has a right to a writ of *mandamus* to compel the mayor's signature. It will be observed that the application is not to compel the city to pay relator. The common council, by passing the resolution over the mayor's veto, has already determined relator should be paid. The claim is that the mayor, as one of the officers of the city, should be compelled to do an official act to effectuate the determination of the council. The case, then, is not within the rule that *mandamus* is not the proper remedy to enforce the payment of moneys due from a municipal corporation for work and labor, as applied in *State, ex rel. Little,* v. *Township Committee,* 8 *Vroom* 84. It is, therefore, unimportant to determine whether or not relator has a right of action against the city to recover the amount due him. The sole questions are, whether it is the mayor's duty to append his signature to this warrant, and whether, he refusing, this court will compel him to perform his duty.

The duty of the mayor respecting such a warrant is not imposed by the charter. It seems to be derived alone from the provisions of ordinances adopted by the city. By the revised ordinance adopted in 1876, the course of proceeding relating to the payment of bills and claims against the city seems to be as follows: The auditor of accounts is required to audit all bills and claims which have been presented to the common council and referred to its appropriate committees, and he is to certify and deliver such as he approves to the city clerk. *Rev. Ord.*, §§ 33, 34. It is expressly provided, however, that nothing in the section requiring such audit shall be construed to affect the power of the common council to make specific appropriations of money by resolution, in payment of claims and demands against the city. Bills and claims allowed by council, and original or certified copies of resolutions making specific appropriations, are to be sent to the auditor and filed in his office. *Id.*, § 35. The money of the city is under the control of the city treasurer. *Id.*, §. 47. It can be drawn out of the treasury only by warrants or orders on the city treasurer, made in accordance with the provisions of section 48. So far as this case is concerned, the requirement of that section is this: " All other warrants for the payment of moneys from the city treasury shall be issued from the general warrant-book in the office of the city clerk, and shall be signed by the mayor and attested by the city clerk and countersigned by the auditor of accounts." Before the auditor countersigns, he is required to compare the warrant with the records in his office relating thereto, and if he discovers any error, he is directed to withhold his signature until the error is corrected. *Id.*, § 36. Upon a warrant being countersigned, the auditor may deliver it, taking a proper receipt therefor.

From this statement it will be perceived that the duty of examining, comparing and determining whether the warrant conforms to the order or resolution of the council is devolved on the auditor of accounts. This duty is, to a certain extent, judicial; and with its exercise, to that extent, this court would not interfere by *mandamus*. But the duty imposed on the

mayor and city clerk is manifestly of a purely ministerial nature. To compel the performance of duties of that character devolved on public officers, clearly falls within the scope of *mandamus*. *High on Ex. Rem.*, § 104, *et seq.; Id.*, § 301; *Dill. on Mun. Corp.*, § 671.

But the mayor contends that, if it be conceded that his duty in this regard is ministerial, and the performance of it may be enforced by *mandamus*, yet the writ ought not to issue in this case. In the Nicolson pavement case, (6 *Vroom* 396,) this court laid down the rule that a relator, to obtain such a writ, must not only show that defendant is bound, in the discharge of his official duty, to do the act in question, but that relator's right to have it done is such as the law ought, at relator's suit, to enforce. In that case a *mandamus* to compel the mayor of Newark to sign a contract which appeared to have been awarded in violation of the charter and ordinances of the city was refused. The contention of the mayor in this case is that relator has failed to show a right to this warrant, which ought to be enforced. The Nicolson pavement case, however, was quite unlike the case in hand, and the rule appealed to by the mayor, if correctly laid down, is not applicable here. In that case an award of a contract was made by a committee in violation of the ordinance from which alone they derived power to make an award. The contract was also opposed to the requirements of the charter. The award of the contract, therefore, which the mayor's signature was required to validate was invalid, because made in violation both of the law and the ordinance. In this case the mayor's signature is required to validate a warrant regularly issued in pursuance of a regular resolution of appropriation of the council, and an exact compliance with the ordinance respecting the issuing of such an order on the treasury.

The specific objection of the mayor to signing the warrant is detailed in a letter forming part of the case, and is in these words: "Because to sign the same would be to officially aid in appropriating the city money in direct conflict with the law. *Section* 116, *Rev. Ord., ch. XIV.*, says: 'But no mate-

rials or labor shall be furnished by the contractor or contractors, or compensation be made therefor, until such contract shall be duly signed and executed by the contracting parties.' There never was a contract signed by me, as mayor of the city of Newark, for this work." The error of the mayor is in applying this objection to the issuing of the warrant. If it has any force at all, it is as against the resolution appropriating the money for relator's claim.

In the city of Newark the common council has power, by ordinance, rule, regulation or by-law, " to manage, regulate and control the finances and property, real and personal, of the city." *Charter*, § 31. By its revised ordinance, the council reserved to itself the power to make specific appropriations of money, by resolution, to pay claims and demands against the city. *Rev. Ord.*, § 33. Such a resolution was subject to the mayor's veto, but could be passed over such veto by a two-thirds vote. The power of appropriation of the city's money is thus vested in the legislative body—the council—subject to a veto liable to be overcome by a certain vote.

The objection which the mayor now urges was interposed by him in his veto of the resolution, as appears by his veto message. But the requisite majority overruled the objection. They rightly construed the ordinance as forbidding compensation to be paid under an unexecuted contract, and not as prohibiting an appropriation to pay for work and materials furnished as these were. The resolution therefore became a law. This action appropriated so much money in the city treasury to the relator, and was conclusive of his right thereto. Thereafter, the issuing of the warrant ought to follow as a matter of course. To permit the mayor to again interpose the same objection, would invest him with a power over appropriations not intended by the charter.

Upon the facts appearing in this case, I think it indisputable that relator ought of right to receive this money. For what cause the mayor refused to sign the contract which had been duly awarded to relator, does not appear. Nothing in the case shows any justification for such refusal. Relator,

having done all he could to complete it, went on with his work, apparently in ignorance that the mayor had refused to complete it. He had done the whole, or almost the whole of the work, which this warrant is meant to pay for, before he was notified by the mayor. The city has received the benefit of his work, and, *ex æquo et bono*, ought to pay for it. Relator's right to pay has been fixed by an act of the city authorities entrusted with the power of appropriation setting apart a specific sum in the treasury for him. Nothing is wanting but the mayor's signature, which he refuses to give.

For this, relator has no adequate specific remedy. If he has power to sue the city, (which admits of some doubt,) a judgment would not advance his claim beyond its present *status*. It would fix the liability of the city and determine the amount due. The resolution of appropriation has already fixed the liability and determined the amount. The injury to relator is solely from defendant's refusal to do this ministerial act. If relator has a right of action against defendant for this neglect of duty, it does not furnish such a remedy as will compel us to refuse a *mandamus*. *Apgar* v. *Trustees, &c.,* 5 *Vroom* 308.

The writ of *mandamus* ought, therefore, to issue, as demanded by relator.